IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LYRON WILSON,

                Plaintiff,                      OPINION AND ORDER

v.

                                          21-cv-679-wmc

TYLER HAMEL and REED STUVE,

                Defendants.

---

Lyron Wilson, an inmate representing himself, claims that Stanley Correctional Institution ("SCI") Officers Reed Stuve and Tyler Hamel inadequately responded to his suicidal threats. The court previously granted Wilson leave to proceed against these defendants on Eighth Amendment deliberate indifference and Wisconsin state-law negligence claims. The parties have cross-moved for summary judgment. (Dkt. ## 13, 19.) Wilson has also moved for leave to file a sur-response brief. (Dkt. #34.) The court grants Wilson's motion and has considered his sur-response brief and documents attached. For the reasons that follow, the court will deny both parties' motions for summary judgment.

UNDISPUTED FACTS[1]

A. Background

At all relevant times, Wilson was incarcerated at SCI, where defendants Stuve and Hamel were correctional officers. In November 2020, Wilson was having a psychological breakdown and felt he might harm himself. While Officers Hamel and Stuve were passing out lunches on his unit, Wilson told Officer Stuve that he urgently needed to talk with him, but Stuve shut the door in his face. (Compl. (dkt. #1-1) ¶ 5.) Wilson's supplemental declarations further add that sometime after Stuve refused to talk with him, he managed to tell Stuve that he was going to kill himself, showed Stuve pills in an "improvised cup" and took 50-100 pills to "show Stuve that he was serious," but Stuve still ignored him. (Wilson Supp. Decl. (dkt. #30) ¶¶ 3-4; Wilson Second Supp. Decl. (dkt. #36) ¶ 5.)

For his part, Officer Stuve declares under oath that while Wilson said something to him, he could not hear what was said and actually told Wilson that it was not a good time to talk. (Stuve Decl. (dkt. #23) ¶¶ 7-8.) More specifically, Stuve maintains that he did not hear Wilson make any suicidal threats and did not see a cup of pills. Rather, after he told Wilson that it was not a good time to talk, he avers that Wilson said, "fuck it" and drank an unidentified substance from an "improvised cup." (*Id.* ¶¶ 9-11.) At that point, Stuve acknowledges having closed Wilson's cell door and continuing on to the next cell.

---

[1] Unless otherwise noted, the following facts are undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence submitted in support. In particular, the court has accepted Wilson's factual assertions in his verified complaint (dkt. #1-1) to the extent they may reasonably be within his personal knowledge. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (accepting that a verified complaint "is also the equivalent of an affidavit for purposes of summary judgment").

(*Id.* ¶ 13.) Finally, Stuve avers that he did not believe that Wilson was at risk of self-harming and was unaware that he had any history of self-harm or any mental health issues. (*Id.* ¶ 22.)

As for Officer Hamel, he recalls passing out meals and hearing Wilson mention having sleep apnea to Officer Stuve, but he could not clearly hear what Wilson said. (Hamel Decl. (dkt. #22) ¶¶ 8-11.) In particular, Hamel avers that he never heard Wilson tell Stuve that he was going to harm himself, but rather heard Stuve telling Wilson that it was not a good time to talk, prompting Wilson to begin yelling that he wanted to talk with Stuve about a "medical issue." (*Id.* ¶¶ 12-14.)

After Officer Stuve left his cell, Wilson further attests that he shouted, "fuck it since you will not see what I needed to talk to you about, I'm going to go ahead and kill myself." (Compl. (dkt. #1-1) ¶ 6.) Wilson also avers that both defendants Stuve and Hamel were standing next to each other and "heard and observed" him threaten to kill himself, but took no action, prompting him to take more than 100 over-the-counter pain relief pills (ibuprofen, Tylenol, and aspirin), and walk out of his cell showing Hamel and Stuve an empty pill bottle and saying, "I just took all these pills." (*Id.* ¶¶ 7-9.) Again, Officer Hamel provides a different account, declaring under oath that, before Wilson's taking pills announcement, he had not heard Wilson say *anything* about wanting to commit suicide. (Hamel Decl. (dkt. #22) ¶ 16.)

Finally, after Stuve ordered him to "lock in," Wilson avers to closing his cell door and drinking a bottle of cleaning solution. (Compl. (dkt. #1-1) ¶ 10.) Although insisting that neither heard Wilson say anything about swallowing cleaning solution, the defendant

3

officers acknowledge alerting their supervisor of a possible health issue, and that Wilson was eventually taken to the hospital. In a post-incident e-mail, Hamel also wrote that, after Wilson yelled that he had taken "200 ibuprofen," Stuve commented that he had only seen a couple of pills in Wilson's cell. (Dkt. #22-1.) While Wilson avers that he suffered injuries to his stomach, pain and severe emotional distress and mental anguish (Compl. (dkt. #1-1) ¶ 17), a post-incident endoscopy showed that, aside from some mild petechia (tiny round spots due to bleeding), his stomach was "completely normal." (Ex. 1000 (dkt. 24-1) 7.)

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because plaintiff is representing himself, the court liberally construes his filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Plaintiff asserts that defendants were deliberately indifferent because they took no action after he threatened to kill himself, and merely ordered him to "lock in" even after revealing that he had taken more than 100 pills. Defendants respond that plaintiff's threat to kill himself was not sufficiently imminent, and even if a threat were imminent, they responded appropriately to address his self-harm attempt. As a result, there appear to be multiple, material disputes of fact and credibility determinations that only a jury can resolve after trial.

As an initial matter, defendants assert that the court should disregard plaintiff's supplemental declaration (dkt. #30) as a sham affidavit because it is inconsistent with his

4

sworn complaint, proposed findings of fact, and their version of events. *See James v. Hale*, 959 F.3d 307, 315-16 (7th Cir. 2020) ("sham affidavit" rule "prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony.") Plaintiff responds that his supplemental declaration did not contradict *any* sworn statement, but merely provided additional information. Indeed, plaintiff statements about his interaction with Officer Stuve in his supplemental declarations largely, if not entirely, add to, and do not in any event clearly contradict, statements in his earlier, verified complaint. *See Knauf Realty, LLC v. Prudential Real Est. Affiliates, Inc.*, 486 F. Supp. 2d 855, 857 (W.D. Wis. 2007) (sham affidavit rule limited to "blatant contradictions"). Thus, the court will consider plaintiff's supplemental declarations.

The Eighth Amendment gives prisoners the right to receive adequate medical care. *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Defendants do not seek judgment on the ground that plaintiff's suicide attempt did not constitute a serious medical condition, *see Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020) ("suicide is an objectively serious medical condition"), instead focusing their arguments on the deliberate indifference element.

Where the harm at issue is a threat of suicide or attempted suicide, the subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide; and (2)

5

intentionally disregarded that risk. *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003); *see also Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (defendant must be aware of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing the act). Moreover, "[i]f the state officers can observe or are told that their detainee is indeed so disturbed that his next step is likely to be suicide, and yet they do nothing, it is fair to say that they have gone beyond mere negligence and entered the territory of the deliberately indifferent." *Miller v. Harbaugh*, 698 F.3d 956, 963 (7th Cir. 2012). Under Wisconsin law, a claim for negligence requires: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (2001).

At this stage, plaintiff has produced sufficient evidence. First, as to Officer Stuve, the parties offer conflicting evidence about when he became aware that plaintiff was threatening or attempted to kill himself. Plaintiff asserts that he not only told Stuve that he was going to kill himself, but Stuve watched him take 50-100 pills yet did nothing. Stuve disputes plaintiff's recollection -- specifically denying having heard plaintiff make any threats of suicide, much less seeing a cup of pills or his ingesting them. Because a jury could reasonably credit plaintiff's version of events and find that Stuve ignored plaintiff's credible threat and *actual* suicide attempt, plaintiff has met his burden of production of evidence of deliberate indifference. *See Miller*, 698 F.3d at 963.

Second, while a closer question as to whether Officer Hamel could be found to have acted with deliberate indifference given his denials of hearing plaintiff threaten to kill

6

himself or announcing that he had taken many pills -- a reasonable jury could also credit plaintiff's version of events and reasonably infer that Hamel also heard plaintiff's threats to kill himself, as well as "heard and observed" his suicide attempts. (Compl. (dkt. #1-1) ¶¶ 6-8.) Indeed, because plaintiff's threat suggested that his next step was suicide -- "I'm going to go ahead and kill myself" -- a jury could reasonably conclude that Hamel acted with deliberate indifference to this suicide risk, at least initially. *Miller*, 698 F.3d at 963.

Defendants also argue that plaintiff's threat was insufficiently imminent, but their supporting cases are distinguishable from the facts here, because plaintiff avers that he advised both defendants of his intent to commit suicide if no one listened. *See Wright v. Funk*, 853 F. App'x 22, 24 (7th Cir. 2021) (guards not on notice of imminent suicide attempt when plaintiff told guards that he was having suicidal thoughts and would like to speak with someone from the psychological services unit); *Johnson v. Garant*, 786 F. App'x 609, 610 (7th Cir. 2019) (guards not on notice of imminent suicide attempt when plaintiff told prison guards that "he felt suicidal and unsafe in his cell"). Of course, a reasonable jury could find that, based on the evidence, neither defendant had reason to believe plaintiff's threats were credible or imminent, but plaintiff may proceed to trial against defendants on his negligence claims as well.

Finally, defendants contend that they are entitled to qualified immunity because they were unaware that plaintiff wanted to harm himself before he took the pills. (Def.'s Resp. Br. (dkt. #20) 11-12.) As discussed above, however, it is disputed whether they knew that plaintiff wanted and actually attempted to kill himself. Moreover, the law is well-established that a correctional officer cannot ignore an inmate's suicide risk and must

7

take steps to ensure his safety.  *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (prison officials are liable under § 1983 for pretrial detainee's suicide attempt if they acted with deliberate indifference to a substantial suicide risk).  Thus, if a jury credits plaintiff's version of the facts, defendants' inaction would appear to violate clearly established law. [2]

ORDER

IT IS ORDERED that:

1) Plaintiff's motion for leave to file a sur-response brief (dkt. #34) is GRANTED.

2) Plaintiff's motion for summary judgment (dkt. # 13) is DENIED.

3) Defendants' motion for summary judgment (dkt. #19) is DENIED.

4) A telephonic scheduling conference is set for April 26, 2024, at 2:00 p.m., defendant to initiate the call to the court at 608-264-5153 to reset the trial date and corresponding trial deadlines.

Entered this 9th day of April, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[2] Of course, this ruling is without prejudice to defendants' renewing their assertion of qualified immunity based on a full, factual record at trial.